IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ÁNGEL REYES-VELÁZQUEZ,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CIVIL NO. 09-1626 (ADC)
Related to Criminal No. 05-232 (ADC)

**REPORT AND RECOMMENDATION**

I.   **Procedural Posture**

On July 6, 2005, a grand jury returned an indictment against Ángel Reyes-Velázquez ("Reyes-Velázquez") and nine other individuals for conspiring to possess with intent to distribute cocaine and heroin, attempting to possess with intent to distribute cocaine and heroin, and carrying a firearm during and in relation to a drug trafficking offense. (Docket No. 3 in case 05-232 (ADC)).[1] On April 4, 2006, Reyes-Velázquez, pursuant to a plea agreement, entered guilty pleas as to counts two and four of the indictment, that is attempting to possess with intent to distribute five kilograms or more of cocaine in violation of Title 21, United States Code, Sections 846, 841(a)(1) and carrying and possessing a firearm during and in relation to said drug trafficking crime in violation of Title 18, United States Code, Section 924(c). (Docket Nos. 178, 179, 180 in case 05-232 (ADC)). On August 25, 2006, Reyes-Velázquez was sentenced to a term of imprisonment of 87 months as to count two and 60 months as to count four, for a total term of imprisonment of 147 months. (Docket Nos. 259 in case 05-232 (ADC)). Supervised release terms of four years as to count two and five years as to count four, to be served concurrently with each

---

[1] Unless indicated otherwise, all citations to the record refer to the case at bar, that is 09-1626 (ADC).

other, were also imposed. Id. Judgment was entered accordingly on the same day that Reyes-Velázquez was sentenced. (Docket Nos. 260 in case 05-232 (ADC)).[2]

On October 13, 2006, Reyes-Velázquez lodged a notice of appeal. (Docket Nos. 309 in case 05-232 (ADC), USCA Case Number 06-2588). On April 7, 2008, the Court of Appeals for the First Circuit affirmed the judgment of the district court, with the limited mandate that imposition of the restitution order in the judgment be reevaluated as to whether it should be stricken. (Docket Nos. 526 in case 05-232 (ADC)). On May 21, 2008, the district court amended the judgment providing for the deletion of and vacating the restitution order within the judgment. (Docket Nos. 527 and 528 in case 05-232 (ADC)).

Pending before the court is petitioner Reyes-Velázquez's motion under 28 U.S.C. §2255 to vacate, set aside or correct the sentenced imposed on him on in case 05-232 (ADC), as well as respondent's opposition and petitioner's reply. (Docket Nos. 1, 5, 7). Petitioner essentially argues that his attorney was ineffective because he failed to challenge count four of the indictment which, in petitioner's view, fails to charge an offense, and because he did not present an entrapment defense. An evidentiary hearing was conducted on January 9, 24, and 26, 2012. An analysis of petitioner's arguments ensues.

## II.   Count Four of the Indictment

Count four of the indictment states as follows:

On or about December 15, 2004, in the District of Puerto Rico, and within the jurisdiction of this Court, [2] Jaime López Pérez a/k/a "Jimmy", [3] Ángel Reyes Velázquez and [4] Elliott Torres Rojas, the defendants herein, aiding and abetting each other, and aided and abetted by the defendant [1] Jorge Padrón Valle a/k/a "Jorgito", not charged herein, did carry and possess a firearm during and in relation

---

[2]According to Reyes-Velázquez's testimony at the evidentiary hearing on January 24, 2012, at some point in 2006 after the federal conviction he also pled guilty to a state charge related to the transportation of controlled substances in June and July of 2005.

> to a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, attempt to possess with intent to distribute cocaine, a charged in Count Two of this Indictment, a violation of Title 21, United States Code, Section 846 and 841(a)(1); all in violation of Title 18, United States Code, Section 924(c)(i), and Title 18, United States Code, Section 2.

(Docket No. 3 in case 05-232 (ADC)). Petitioner contends that count four, as drafted, "consists of an amalgam of conduct taken from different segments of the 924(c) statute." (Docket No. 1-2 at 6). Hence, petitioner holds the view that using or carrying a firearm during and in relation to any drug trafficking crime is one offense, while possessing a firearm in furtherance of such drug trafficking crime is a distinct and separate offense. Id. at 6-7. In support of this statutory interpretation, petitioner cites precedent from various appellate courts, with particular emphasis in United States v. Combs, 369 F.3d 925, 933 (6th Cir 2004) (holding that standard of proof differs between the "in furtherance of" and "during and in relation to" prongs of §924(c)). Thus, petitioner concludes that by count four alleging that Reyes-Velázquez carried and possessed a firearm during and in relation to a drug trafficking crime, the "indictment utilizes one element from each of the two distinct §924(c) offenses, indicting him based on conduct from the §924(c) **possession** offense in conjunction with the standard of participation (during and in relation) from the **carrying** offense, resulting in a failure to charge Reyes-Velázquez with any codified federal crime." (Docket No. 1-2 at 7) (emphasis in original).[3]

The circuits are not in agreement as to whether an indictment's mixing of the elements of §924(c)'s "use and carry" and "possession" prongs constitutes reversible error. Compare United

---

[3] Although petitioner articulates his claim as a sufficiency of the indictment argument due to absence of a charge, implicitly he appears to also allege that count four of the indictment is duplicitous because it joins two or more distinct crimes in a single count. 1A Wright & Leipold, Fed. Prac. & Proc.Crim. §142 (4th ed.) The concern with a duplicitous count is twofold: (1) jurors cannot convict of one offense and acquit on another offense within the same count and (2) jurors could end up rendering a verdict of conviction without reaching a consensus on either offense contained in the count. Id. Duplicitous pleading, however, is not presumed to be invalid; it only becomes impermissible if it prejudices the defendant. United States v. Sturdivant, 244 F.3d 71, 75 n.3 (2d Cir. 2001).

States v. Combs, 369 F.3d 925, 933 (6th Cir 2004) (conviction reversed where indictment confused the elements of both prongs) with United States v. Arreola, 467 F.3d 1153, 1156-60 (9th Cir. 2006) (finding that "the legislative history does not support the conclusion that Congress intended to create two separate offenses in §924(c)").[4]  Although persuasive arguments have been articulated on both sides of the equation, the undersigned finds the reasoning in Arreola to be the more accurate reading of the statutory language and its legislative history.

> The Arreola court first addressed the statutory language of § 924(c) and held that while the disjunctive language indicates that the statute prohibits separate acts, it does not create two separate offenses. See id. at 1158. In reaching this conclusion, the court pointed out that the absence of sub-sections delineating separate offenses and the fact that both the "possession" and "use and carry" clauses are in a single sentence confirms that Congress only intended to create one offense. Id. The court then went on to conduct an in-depth analysis of the legislative history of § 924(c) and held that it did not point conclusively in either direction, but tended to support the position that Congress only intended to create a single offense. See id. at 1158-59. Next, the court found that § 924(c) does not prescribe "distinctly different kinds of conduct" and the similarity of the evidence required to prove a violation of the first clause of § 924(c) and the second suggests that the statute proscribes only one offense. Id. at 1159. Finally, the court found that it would be inappropriate to apply multiple punishments to a defendant that violated both clauses of § 924(c) indicating it is unlikely that Congress intended for § 924(c) to encompass separate offenses. See id. at 1160 ("Applying this rule to § 924(c), it would seem absurd to permit multiple punishment of a defendant who violates both the 'uses or carries' clause and the 'possession' clause.")

United States v. Stewart, 2009 WL 2149603, at *2 (N.D. Ill. July 17, 2009).  Therefore, Reyes-

---

[4] Other circuits have been less clear in their pronouncements on this issue.  E.g., United States v. King, 628 F.3d 693, 700 n.3 (4th Cir. 2011) (rejecting challenge to the sufficiency of the indictment despite acknowledging a prior "unpublished non-precedential opinion" that in different circumstances held that §924(c) "creates distinct 'use and carry' and 'possession' offenses" (citation omitted)); United States v. Harvey, 484 F.3d 453, 456-57 (7th Cir. 2007) ("Whether we construe §924(c) as creating one offense or two, it remains true that the separate parts of §924(c) criminalize similar behavior."); United States v. Avery, 295 F.3d 1158, 1174-76 (10th Cir. 2002) (concluding that "although there may be differences between the meaning of 'in furtherance of' and 'during and in relation to,' the two standards appear to carry substantially the 'same import,' namely that there must be a nexus between the firearm and the alleged crime, and that the mere possession of the firearm by a person connected to and engaged in a drug trafficking crime is insufficient to trigger §924(c)(1)").  Although in its opposition to petitioner's §2255 motion the government cites United States v. O'Brien, 542 F.3d 921 (1st Cir. 2008) to dismiss the Sixth Circuit's Combs decision, O'Brien does not address squarely the issue in controversy.

4

Velázquez's claim that his §2255 motion ought to be granted because count four, in accusing him of carrying and possessing a firearm during and in relation to a drug trafficking crime, fails to charge an offense is unpersuasive.

### III.   The Entrapment Defense and other Miscellaneous Allegations

Petitioner claims that his attorney was ineffective because he failed to raise an entrapment defense and instead, advised petitioner to enter a guilty plea "because nobody would believe that he was induced to commit the crime and the confidential informant would testify against him...." (Docket No. 1-2 at 13). Petitioner also stresses that co-defendants Jaime López Pérez and Ramón Núñez Rosario "did go to trial and did establish an affirmative entrapment defense", while the government never called its confidential informant to the stand. Id.

Furthermore, petitioner contends that his attorney did not consider the viability of an entrapment defense, did not investigate any defense at all, and "thought only of pleading his client guilty." (Docket No. 1-2 at 12). Moreover, Reyes-Velázquez states that his told his attorney that he felt that he had been induced to commit a crime and that he wanted to go to trial, but that counsel's reply was: "[A] trial in this matter would be futile. You were a dirty cop on the take. Nobody is going to believe you. If you go to trial and lose you're going to get 40 years and that will be it." Id. at 10. The viability of petitioner's entrapment defense shall be addressed first.

"Entrapment is an affirmative defense." United States v. Vasco, 564 F.3d 12, 18 (1st Cir. 2009).

> Entrapment is present "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Using this definition, it is easy to see that there are two necessary prongs to the entrapment defense: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."

>  Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); United States v. Gamache, 156 F.3d 1, 9 (1st Cir.1998); United States v. Rodríguez, 858 F.2d 809, 815 (1st Cir.1988) (noting that "entrapment cannot occur unless both elements coincide").

United States v. Walter, 434 F.3d 30, 35 (1st Cir. 2006).

At the trial of co-defendants Jaime López Pérez and Ramón Núñez Rosario, Reyes-Velázquez admitted that he participated in providing escort to the transportation of controlled substances in two separate occasions, the first of which was on or around December 16, 2004 and the second one on or around January 21, 2005. (Docket No. 1-3 at 21-25).[5] Therefore, even though petitioner claims that by the time he had agreed to participate providing escort services to the transportation of narcotics he was unable to retract because he was already committed, such allegation is unsustainable for the second time that he agreed to participate in such illicit venture. Hence, petitioner would not have been able to show a lack of predisposition to engage in criminal conduct, an element of an entrapment defense.

>  The factors for determining predisposition are: (1) the defendant's character and reputation; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed reluctance; and (5) the nature of the government's inducement. No single factor controls, but whether the defendant showed reluctance is considered the most important.

United States v. Pérez-Hinojosa, 191 F.3d 462, *2 (9th Cir. 1999) (citations omitted) (unpublished disposition). It is difficult to see how can petitioner make a showing of reluctance when he agreed to participate twice in escorting the transportation of drugs.

If anything, there was clear evidence to the contrary:

---

[5] Although petitioner's testimony was that he could not recall the dates with precision (Docket No. 1-3 at 22), he did admit that he participated in two distinct escorts in which he was aware that narcotics were being transported. (Docket No. 1-3 at 23, lines 5-15; at 25, lines 8-10).

>   Q: Isn't it a fact that following your receipt of your money, you also proposed the CI to buy drugs for yourself, yes or no?
>   A: That is correct.

(Docket No. 1-3 at 30, lines 10-13). Thus, not only did defendant engage in illegal conduct on two separate occasions for his own personal profit, but also took the initiative to suggest further underground activities for his own personal benefit.

> Entrapment does not blossom whenever a person succumbs to his own greed or to the lure of easy money: it blooms only when the crime for which the miscreant is subsequently charged was instigated by minions of the law and the offender had no previous disposition towards commission of the deed. The initial burden of bringing to light some evidence of entrapment must be shouldered by the accused. "A factual issue sufficient to require submission to a jury arises only if [the accused's] evidence amount[s] to more than a mere scintilla." Only if a defendant makes out a threshold showing that a government agent turned him from a righteous path to an iniquitous one does the government's obligation affirmatively to disprove entrapment mature.

United States v. Coady, 809 F.2d 119, 122 (1st Cir. 1987) (citations omitted). Petitioner has failed to bring to the attention of the court more than a scintilla of evidence to show his lack of predisposition to engage in criminal conduct. Consequently, an entrapment defense does not appear viable from the evidence on the record.

Turning now to the allegations that petitioner told his attorney that he wished to proceed to trial, said contentions lack merit. At petitioner's change of plea hearing, he voluntarily and knowingly communicated his understanding that he was waiving his right to a jury trial, as well as his satisfaction with his trial attorney:

> COURT: Now, do you know that you have a right to plead not guilty and to a trial by jury as to your guilt or innocence?
> DEFENDANT: I do, Your Honor.
> COURT: Do you realize if you plead guilty, you will be found guilty without a trial?
> DEFENDANT: I do, Your Honor.
> COURT: Are you satisfied with your counsel and the way he has been representing

> you?
> DEFENDANT: Yes, I am, sir.
> COURT: Do you wish to make any changes to that statement?
> DEFENDANT: No, sir.
> ...
> COURT: Now, has anyone forced you, coerced you or intimidated you into pleaded [sic] guilty?
> DEFENDANT: No, sir.
> ...
> COURT: How do you plead as to counts two and four?
> DEFENDANT: Guilty.

(Docket No. 448 in 05-232 (ADC) at 4, lines 5-19; 5, lines 17-20; 25, lines 20-22).

Petitioner cannot now pretend that his previous statements under oath should be disregarded by the court without justification. At the evidentiary hearing held on January 24, 2012, petitioner admitted that he knew that he could write a letter or file a motion requesting the appointment of new counsel, yet he never did so, a fact that suggests that he was indeed satisfied with his trial attorney at the moment that he entered his guilty plea in the federal forum.

Moreover, during trial attorney Benito Rodriguez Masso's testimony at the evidentiary hearing held on January 9, 2012, he indicated: that the plan to proceed to trial changed once the plea offers were sent by the government; that petitioner never communicated to him that he wished to proceed to trial; that the motion for change of plea was filed upon counsel's advice and petitioner's instructions as ultimately the clients are the ones who make the decision of whether to plead guilty to a charge; and that he discussed with petitioner the plea agreement at least once at the Metropolitan Detention Center and once in the courthouse. Furthermore, counsel Benito Rodríguez Masso testified that he analyzed possible defense theories prior to the change of plea hearing, including the possibility of an entrapment defense which he discarded as not viable because petitioner did not withdraw from the conspiracy or drug transaction once he found out that illegal controlled substances were involved, no evidence was present suggesting that petitioner was

unable to withdraw due to duress or coercion, and instead petitioner opted to participate in a second illegal venture.[6]

In addition, counsel Rodríguez Massó testified: that he had a good attorney-client relationship with Reyes-Velázquez; that petitioner never complained to him about the quality of his legal representation; that petitioner's family was satisfied with the plea agreement reached with the government; that in fact petitioner's father went to counsel's office at some point after the change of plea hearing – or possibly after the sentencing hearing – to express his satisfaction with the plea agreement; and that Reyes Velázquez never advised him of regretting having pled guilty.

Although at the evidentiary hearing held before the undersigned witnesses Ramón Núñez Rosario and Jaime López, previously petitioner's codefendants in case 05-232 (ADC), appeared to contradict counsel Rodríguez Massó's testimony as to his good relationship with petitioner and as to petitioner's willingness to enter a guilty plea, there are reasons to place less weight on their testimonies. As to Ramón Núñez Rosario, petitioner testified favorably towards him during his trial.

> Q: And did Mr. Núñez receive instructions as to what he was going to do?
> A: Well, Ramón Núñez had no reason to receive any instructions, because first he is not a police officer, second of all he didn't know what was going on there, he is not one of us.
> ...
> Q: Did you see Mr. Núñez with a firearm at any time?
> A: At no time.
> Q: Did you see Mr. Núñez handle any controlled substances?
> A: Nor Nuñez nor anyone who was involved in that.
> ...
> A: The reason I came here to testify on Mr. Núñez' behalf, because the truth is that I am a convict, I am in the Federal prison, I signed a plea agreement, I accepted my guilt, I accepted my sentence of 12 years. But the truth is that Núñez has nothing

---

[6]Counsel Rodríguez Massó acknowledged that possibly at some point Reyes Velázquez told him that he felt "entrapped", but that counsel explained to him why the entrapment defense was not viable due to the reasons explained above. Counsel Rodríguez Massó also clarified that the matter of entrapment must have been discussed before the change of plea hearing.

> to do with me nor any one of the persons involved in this crime for which I was convicted, and that is the truth, that is my truth, that is why I am here. No promises have been made to me, this being done freely and voluntarily. I am doing this out of my conscience, I know he has nothing to do with me or nay of the guys that were doing this, and I think it is unfair this guy should spend one more day in jail, knowing that he is innocent.

(Docket 1-3 at p.14, lines 2-7; at p.20-21). Thus, Núñez Rosario's motive for testifying in support of a *habeas corpus* petition made by a former co-defendant that testified favorably towards him is questionable. Furthermore, on cross-examination at the evidentiary hearing Núñez Rosario admitted that he had never been present at the conversations between trial counsel Rodríguez Massó and petitioner. In addition, although acquitted in the underlying case 05-232, Núñez Rosario is a convicted felon for possession for violations to 18 U.S.C. §921(a)(3), §922(g)(1), and §1791(a)(2), a fact that raises some additional doubts as to the witness' credibility. (Docket 66 in 11-61 (DRD) and Docket 37 in 11-166 (DRD)).

With respect to Jaime López, during the evidentiary hearing he acknowledged that Reyes Velázquez was a witness called by the defense in López's favor, and that Reyes Velázquez's testimony was very valuable to López case. Consequently, as with the previous testimony, doubts may arise as to whether López's testimony to the effect that counsel Rodríguez Massó yelled at petitioner and imposed his views upon petitioner is credible.

Counsel Rodríguez Massó also categorically denied ever having said to his client that a trial would be futile, that petitioner was "a dirty cop on the take" and that nobody was going to believe him, noting that he never addresses his clients in such manner. Although counsel Rodríguez Massó did acknowledge that possibly at the very early stages of the case when he received a copy of the indictment he might have warned the defendant about the possibility of facing a term of 40 years of imprisonment, if anything, this was an understatement of the potential penalties, as all the

counts in which Reyes Velázquez was charged each carry a maximum statutory term of imprisonment of life incarceration.[7]

Finally, the plea agreement clearly warns Reyes Velázquez that by pleading guilty he is surrendering his right to confront government witnesses and present in turn witnesses and evidence in his own behalf. (Docket No. 179 at ¶18 (d) in 05-232 (ADC)). Thus, petitioner voluntarily relinquished his right to present an entrapment defense. The decision not to raise an entrapment defense is a tactical decision.

> [T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance. Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required.

United States v. Ortiz Oliveras, 717 F.2d 1, 3-4 (1st Cir. 1983) (citations omitted). Nothing on the records suggests that counsel Rodríguez Masso's assessment of the case was completely unreasonable or bearing no relationship to a possible defense strategy.

Petitioner contends that counsel Rodríguez Masso's failure to investigate the confidential informant's checkered past and the government's failure to timely disclose impeachment material is a sufficient basis to grant the *habeas* relief requested. Nevertheless, at the change of plea hearing petitioner proceeded to enter a guilty plea despite being warned that if he proceeded with such course of action he would be waiving "the right to confront and cross-examine the witnesses who will testify against you at trial." (Docket No. 448 at p.5 in 05-232 (ADC)). Therefore, petitioner waived his right to impeach the confidential informant. E.g. Hoff v. Larkins, 2010 WL 1221788, *5 (E.D.Mo. 2010) (unreported) (denying *habeas* relief and noting, *inter alia*, that

---

[7]This also underscores the fact that Reyes Velázquez obtained a substantial benefit at the plea bargaining table, as ultimately he was sentenced to terms of imprisonment totaling 147 months.

despite petitioner's contention that counsel was ineffective in advising him to plead guilty when an officer's statements could have been impeached with the officer's prior inconsistent statements, the "record includes petitioner's own assurances, made under oath, that he was pleading guilty with the knowledge ... that he was giving up his right to examine the witnesses against him, which includes the officer who allegedly made inconsistent statements....")[8]

"[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set for in McMann v. Richardson, 474 U.S. 52 (1985)." Hill v. Lockhart, 474 U.S. 52, 56-57 (1985). Therefore, to prevail in his request for *habeas* relief, petitioner must show that his trial attorney fell below an objective standard of reasonableness and that he would have insisted on going to trial but for that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-688 (1984). In the case presently before the court, trial counsel had – for the reasons previously discussed – legitimate reasons to conclude that an entrapment defense would not be viable in petitioner's circumstances.

WHEREFORE, for the reasons stated above, it is recommended that petitioner's § 2255 motion be DENIED.

IT IS SO RECOMMENDED.

Any objections to this report and recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Failure to timely file specific objections

---

[8] During the evidentiary hearing held on January 9, 2012, petitioner's questioning of counsel Rodríguez Massó seemed to implicitly raise an issue as to the fact that said counsel was not aware of impeachment information regarding the government's cooperating witness and/or confidential informant. Reyes Velázquez pled guilty on April 4, 2006, the same day that his trial was scheduled to begin. (Docket Nos. 148 and 178 in case 05-232 (ADC)). Although the date when Giglio material was due did not remain intact due to the multiple defendants in this case (compare Docket Nos. 52 and 203 in case 05-232 (ADC)), it is not unusual, depending on the discretion of the presiding judge, to have a production deadline relatively close to the trial date. Reyes Velázquez filed the motion for change of plea on March 31, 2006. Therefore, even if it is assumed *arguendo* that Giglio material was not given to counsel Rodríguez Massó prior to the change of plea, the date of the filing of the change of plea motion is not necessarily inconsistent with the parameters of a Giglio production deadline near the trial date.

to the report and recommendation is a waiver of the right to review by the district court.

In San Juan, Puerto Rico, this 5th day of March, 2012.

s/Marcos E. López
United States Magistrate Judge
